ERIC R. WESTBROOK BY HIS NEXT FRIEND, WILLIE WESTBROOK v. McCABE ROBINSON

No. 7126SC115

(Filed 26 May 1971)

1. **Appeal and Error § 50— instructions — harmless error — directed verdict against appellant**

    Error in the court's charge to the jury will be deemed harmless when the evidence was such that the trial court should have directed a verdict against appellant.

2. **Automobiles §§ 41, 63— striking child who suddenly darts into road**

    Motorist driving at a lawful speed was not liable for injuries to a seven and a half year old child who ran into the street from between two parked vehicles so suddenly that the motorist could not avoid striking him.

APPEAL by plaintiff from *Martin (Harry C.), Judge,* 14 September 1970 Schedule "A" Civil Session of Superior Court held in MECKLENBURG County.

Plaintiff instituted this action to recover damages for personal injuries resulting from a collision between plaintiff, a pedestrian, and an automobile driven by defendant. Plaintiff, a seven and a half year-old boy, alleged that the proximate cause of his injuries was the defendant's negligent operation of his automobile.

Defendant denied negligence and alleged that the proximate cause of the plaintiff's injuries was plaintiff's negligence in running out from concealment between two parked cars without looking when it was impossible for defendant to stop in time to avoid a collision. Defendant further alleged that the accident complained of was an unavoidable accident brought about by the sudden emergency created by the action of the minor plaintiff

in running out into the street in front of defendant's automobile.

Plaintiff's evidence tended to show the following. Waccamaw Street on which the accident occurred is 20 feet wide, and is an east-west street. The street has a rough surface and might have been cobblestone at one time, but is now covered with coarse asphalt. There is a concrete sidewalk on the north side of Waccamaw, but there is no sidewalk on the south side of the street because the buildings on the south side are situated very near the street. The Waccamaw Street area is a very heavy residential area, with one-family houses and duplexes thickly placed on the north side and apartments on the south side of the street.

At the time of the accident two automobiles were parked on the north side of Waccamaw Street near the curb. Defendant was proceeding eastwardly on Waccamaw. At the point of impact there is a slight upgrade on Waccamaw Street. The speed limit on Waccamaw is 35 miles per hour. Immediately prior to the accident, plaintiff's sister, then age eleven, had chased plaintiff out of their home after he had struck her with a toy bear.

Plaintiff's own testimony is, in substantial part as follows:

". . . I don't recall what I was doing five, ten or fifteen minutes prior to the time I had this collision. Oh yes—I was running from my sister. I ran down there by Mrs. Pullen's house and went down there at Red Hill's and ran across the street and ran back. . . . After I ran down there where the house was I ran across the street. I ran across the street where the cars were and then I ran back. When I ran back across over onto the other side of the street, this was not the time I was struck.

". . . When I ran across and then I ran back that's when I got hit. I don't know how long it took me to run across the street from where Mrs. Pullen lives and back across the street when I got struck. No sir, I don't have an opinion as to how much time it was. I don't know whether it was immediately after I cross the street over there. I stop running when I was over there by them cars. And I didn't stay over there a minute. I ran out between two cars and I don't remember how far those two cars were apart. . . ."

. . .

". . . She chased me down Irvin Avenue—and I did not know that she had turned around and started back

home. I still kept running—and I ran across Waccamaw and then back. I was not hiding between these cars. I stopped over there by the cars and stayed over there a minute or so then after I had been there a little while, then that's when I started—I ran out between those cars to go back across Waccamaw, and it was at that time that I was hit. I did not know whether Maretta was still chasing me or not. I did not know where she was. I thought she was still around there somewhere. . . ."

Defendant was called as a witness for the plaintiff and testified in substance, except where quoted, as follows. He is familiar with the area and formerly lived on Waccamaw Street. He operates an automobile upholstery business a short distance from the site of the accident. He was leaving his place of business on the day in question on a routine business trip. He saw a group of small children standing on the sidewalk on the north side of Waccamaw and had seen children playing along the street and in a nearby lot in the past. Defendant, the only eyewitness except the plaintiff, described the collision:

". . . [W]hen Eric ran out between these cars I would say that I was about a length and a half or two lengths of a car from him. In terms of feet—I imagine the average car is about 20 feet—I was about 1 and a half or two lengths beyond Eric when he ran out in between the cars. At that time when he ran out between the cars I was traveling between twenty to twenty-five miles an hour. I keep my car in pretty average condition. When I first observed him come between the cars I was about two car lengths from him— I would say approximately. . . . [I]n about the instant I seen him, Eric was darting in front of my car, between the parked cars and I started braking. I said I was going about 25 miles an hour possibly when I seen Eric, when I started braking my car.

". . . These two cars that I said was located on the north side of Waccamaw Street did obstruct the youngster going between the car—it cut off my vision and I didn't see him until the instant he darted from behind one. . . ."

.  .  .  .

"When Eric came out he was running and as soon as I saw him run out I hit my brakes. I saw him the instant he came from behind the car. . . ."

"The left tip of my bumper and I believe part of the headlight rim struck Eric. . . ."

Officer Fenlong of the Charlotte Police Department testified that there were 28 feet of skid marks to the rear of the point of impact and 22 feet of skid marks beyond the point of impact. Officer Fenlong said, "From the physical evidence, his car stopped where it struck, approximately where it struck. The child was still lying there when I got there. . . . Eric Westbrook was lying approximately at the rear wheels of the car. . . ."

At the close of the plaintiff's evidence, defendant moved for a directed verdict. That motion was denied. Without putting on any evidence, defendant rested and renewed his motion for a directed verdict. Again his motion was denied. The jury answered the issue of defendant's negligence in the negative. From a judgment entered pursuant to the verdict, plaintiff appealed.

*W. B. Nivens for plaintiff appellant.*

*Jones, Hewson and Woolard by William L. Woolard for defendant appellee.*

VAUGHN, Judge.

[1] All of appellant's assignments of error are directed to the charge of the court. We are inclined to agree that the charge was not free of error.

In our deliberations as to the proper disposition of this appeal, however, we have considered the following principles set out in *Freeman v. Preddy*, 237 N.C. 734, 76 S.E. 2d 159, a case in which the Supreme Court agreed with the appellant that there was error in the charge.

"But this we need not now decide for technical error alone is not sufficient. New trials are not granted for error and no more. The burden is on the appellant not only to show error but also to show that he was prejudiced to the extent that the verdict of the jury was thereby probably influenced against him. [Citations omitted.]

"The error must be 'material and prejudicial, amounting to a denial of some substantial right,' *Wilson v. Lumber Co.*, 186 N.C. 56, 118 S.E. 797, and an error cannot be regarded as prejudicial to a substantial right of a litigant

unless there is a reasonable probability that the result of the trial might have been materially more favorable to him if the error had not occurred. *Call v. Stroud,* 232 N.C. 478, 61 S.E. 2d 342; *Garland v. Penegar,* 235 N.C. 517, 70 S.E. 2d 486.

"In applying this rule, we have consistently held that when, upon a consideration of the whole record, it clearly appears that the appellant, under no aspect of the testimony, is entitled to recover and that the evidence considered in the light most favorable to him is such that the trial judge would have been fully justified in giving a peremptory instruction, or directing a verdict against him on the determinative issue or issues, any error committed during the trial will be deemed harmless. *Gray v. Power Co.,* 231 N.C. 423, 57 S.E. 2d 316; *McArthur v. Byrd,* 213 N.C. 321, 195 S.E. 777; *Foxman v. Hanes,* 218 N.C. 722, 12 S.E. 2d 258; *Clark v. Henrietta Mills,* 219 N.C. 1, 12 S.E. 2d 682; *Ramsey v. Ramsey,* 229 N.C. 270, 49 S.E. 2d 476."

[2] The evidence in the present case, when considered in the light most favorable to the plaintiff, was such that the trial judge should have granted defendant's motion for a directed verdict. The rule applicable to the situation at hand is found in *Dixon v. Lilly,* 257 N.C. 228, 125 S.E. 2d 426:

" 'Thus, when a motor vehicle is proceeding upon a street at a lawful speed, and is obeying all the requirements of the law of the road and all the regulations for the operation of such machine, the driver is not generally liable for injuries received by a child who darts in front of the machine so suddenly that its driver cannot stop or otherwise avoid injuring him.' "

See also *Johns v. Day,* 257 N.C. 751, 127 S.E. 2d 543; *Brewer v. Green,* 254 N.C. 615, 119 S.E. 2d 610; *Brinson v. Mabry,* 251 N.C. 435, 111 S.E. 2d 540.

No error.

Chief Judge MALLARD and Judge PARKER concur.